# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE WILD SWAN,<br>P.O. Box 103,<br>Bigfork, MT 59911,<br><br>      Plaintiff,<br><br>        v.<br><br>DAVID ROEMER,<br>In his official capacity as<br>Superintendent of<br>Glacier National Park,<br>National Park Service<br>P.O. Box 128<br>West Glacier, MT 59936;<br><br>KATHARINE HAMMOND,<br>In her official capacity as<br>Intermountain Regional Director,<br>National Park Service<br>P.O. Box 25287<br>Denver, CO 80225; and<br><br>THE NATIONAL PARK SERVICE,<br>1849 C Street NW<br>Washington, D.C. 20240,<br><br>      Defendants. | Case No. 24-cv-398 |

## COMPLAINT

JARED S. PETTINATO, DC Bar No. 496901
The Pettinato Firm
1802 Vernon St. NW, PMB 620
Washington, DC 20009
(406) 314-3247
Jared@JaredPettinato.com

*Attorney for Plaintiff*

**INTRODUCTION**

1. More than four months have passed without Defendants Glacier Park Superintendent David Roemer, Interior Regional Director Katharine Hammond, and the National Park Service (collectively, the Park Service) producing a single document in response to a direct, clear Freedom of Information Act (FOIA), 5 U.S.C. § 552, request. In the meantime in Glacier National Park, the Park Service has likely started implementing its fish-poisoning project.

2. Plaintiff Friends of the Wild Swan (Friends) seek documents related to the Westslope Cutthroat and Bull Trout Preservation in Gunsight Lake Project. Friends filed a FOIA request in September 2023. All deadlines have long passed. FOIA compels the Park Service to produce the requested documents immediately to and without charging Friends, a charitable 501(c)(3) nonprofit organization.

**CAUSE OF ACTION, JURISDICTION, AND VENUE**

3. United States Code Title 28, sections 1331 and 1361, assign this Court jurisdiction both because this case presents a federal question and because it is "in the nature of mandamus to compel" United States officers and agencies "to perform a duty owed to" Friends. *See Califano v. Sanders*, 430 U.S. 99, 105 (1977).

4. FOIA waives sovereign immunity. 5 U.S.C. § 552(a)(4)(B); *see also* 5 U.S.C. § 702.

5. The District of Columbia sets the proper venue because FOIA specifies this District as an appropriate forum for FOIA claims, 5 U.S.C. § 552(a)(4)(B), and because Defendants are U.S. officers or agencies, *see* 28 U.S.C. § 1391(e)(1).

**PLAINTIFF**

6. Since 1987, Friends of the Wild Swan has been committed to accomplishing its goals. It aims (1) to protect and to improve water quality for people and native fish, (2) to maintain and to recruit old-growth forest habitat to ensure the viability of old-growth dependent birds and wildlife, and (3) to improve fish and wildlife habitat security by reducing road densities on public lands.

7. Friends has consistently used a multi-pronged approach of citizen advocacy. It participates in state and federal agency administrative processes (comments and appeals), completes public education and outreach, conducts scientific and economic research, and litigates to enforce environmental laws. Its approach has produced positive changes in the way federal and state agencies manage aquatic and terrestrial ecosystems on behalf of the public.

**DEFENDANTS**

8. Glacier National Park Superintendent David Roemer, in his official capacity, oversees and directs Glacier National Park. He approved the Project's environmental assessment (the EA), and he recommended the Finding of No Significant Impact (the FONSI) for approval.

9. National Park Service Intermountain Regional Director, Katharine Hammond, in her official capacity, oversees the Park Service's Intermountain Region. She approved the FONSI under National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321-4347.

10. The National Park Service is a component of the Department of the Interior. It is implementing the FONSI.

## LEGAL BACKGROUND

### I. The Freedom of Information Act

11. When "any person" requests federal agency "records" and "reasonably describes" them, FOIA requires "each agency" to "make the records promptly available." 5 U.S.C. § 552(a)(3)(A). FOIA contains detailed deadlines for producing documents. When agencies fail to comply, it gives requesting citizens a federal-court cause of action to direct the agency to produce those documents. "Congress viewed the federal courts as the necessary protectors of the public's right to know." *GTE Sylvania, Inc. v. Consumers Union of the U.S., Inc.*, 445 U.S. 375, 387 (1980).

12. Congress declared "the policy of the United States that the public is entitled to the fullest practicable information regarding the decisionmaking processes of the Federal Government." Government in the Sunshine Act, Pub. L. No. 94-409, 90 Stat. 1241 (Sept. 13, 1976) (codified at 5 U.S.C. § 552b note). It holds that "government should conduct the public's business in public." *Clark-Cowlitz Jt. Operating Agency v. FERC*, 775 F.2d 359, 359 (D.C. Cir. 1985) (quotations omitted).

13. To that end, Congress enacted FOIA "to ensure [that] an informed citizenry, vital to the functioning of a democratic society" could "check . . . corruption and . . . hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Therefore, FOIA "require[s] agencies to adhere to a general philosophy of full agency disclosure," so as "to open agency action to the

light of public scrutiny." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142

(1989) (citations and quotations omitted).

A. <u>FOIA requires agencies to make documents promptly available.</u>

14. Mechanically, when "any person" requests agency "records" and "reasonably

describes" them, FOIA requires the agency to "make the records promptly

available." 5 U.S.C. § 552(a)(3)(A). FOIA contains strict timelines. It requires the

responding agency to provide, within twenty business days, a determination of

which documents it will produce. 5 U.S.C. § 552(a)(6)(A)(i).

15. Agencies can refuse to produce documents only if an exemption applies. *See* 5

U.S.C. § 552(b); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975).

16. FOIA requires no follow-up from the requesting party to exhaust its

administrative remedies. Instead, after the time periods pass, FOIA deems the

requesting party to have exhausted its administrative remedies. 5 U.S.C. §

552(a)(6)(C)(i). "If the agency does not adhere to FOIA's explicit timelines, the

'penalty' is that the agency cannot rely on the administrative exhaustion

requirement to keep cases from getting into court." *Citizens for Responsibility &*

*Ethics v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013) (*CREW*).

B. <u>FOIA directs agencies to produce documents without charge or at a reduced</u>
   <u>charge when the requester seeks them to advance the public interest.</u>

17. FOIA requires agencies to produce documents without charge, or at a

reduced charge, if disclosure advances the public interest and is not primarily in the

requester's commercial interest. 5 U.S.C. § 552(a)(4)(A)(iii); 43 C.F.R. § 2.45(a).

Congress amended FOIA to direct agencies to "liberally construe[]" the fee waiver

provisions "in favor of waivers for noncommercial requesters." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (quotations omitted).

18. The Department of the Interior's regulations require the Park Service to determine whether the requester made the request in the public interest and not primarily for its commercial interest. 43 C.F.R. § 2.48(a) ("the bureau will consider"); *see* 43 C.F.R. § 1.2 (defining "Department" to include "any bureau, office, or other unit of the Department of the Interior").

19. Courts do not defer to an agency's determinations on the disclosure in the public interest or the requester's commercial interest, but "determine the matter de novo." 5 U.S.C. § 552(a)(4)(A)(vii).

## II. The National Environmental Policy Act

20. With NEPA, Congress "promote[d] [a] sweeping commitment to prevent or eliminate damage to the environment and biosphere by focusing Government and public attention on the environmental effects of proposed agency action." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 371 (1989) (quotations omitted). NEPA requires federal agencies to analyze the environmental effects of their actions before acting instead of allowing an agency to "act on incomplete information, only to regret its decision after it is too late to correct." *Id.* It requires agencies to produce environmental analyses that achieve "the twin functions" of [a] "requiring agencies to take a 'hard look' at the consequences of the proposed action and [b] providing important information to other groups and individuals." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 356 (1989).

21. Courts recognize NEPA as a "democratic decisionmaking tool." *N. Carolina Wildlife Fed'n v. N. Carolina Dep't of Transp.*, 677 F.3d 596, 603 (4th Cir. 2012) (quotations omitted). The NEPA regulations incorporate FOIA to achieve NEPA's objectives. They require agencies to make "the comments received, and any underlying documents available to the public pursuant to the provisions of the Freedom of Information Act, as amended (5 U.S.C. 552)." 40 C.F.R. § 1506.6(f) (2023).

## FACTUAL BACKGROUND

A. The Lake Poisoning Project

22. The Park Service likely already poisoned Gunsight Lake in Glacier National Park to eliminate rainbow trout. FONSI 5. No fish lived there before the Government stocked the lake with fish in about 1916. *Id.* at 2.

23. Next, the Park Service plans to restock the lake with westslope cutthroat trout, bull trout, and mountain whitefish. *Id.* at 3. The Department of the Interior lists bull trout on the list of endangered species as threatened. *Id.* at 2. Montana lists westslope cutthroat trout as a species of concern. *Id.* The Park Service never identified all of the sources from which it intends to obtain the fish for restocking.

B. Friends' FOIA Request

24. Under NEPA, the Park Service issued an EA in May 2023. Within the comment period, Friends sent public comments. In August, the Park Service issued the FONSI.

25. The next month, on September 18, 2023, Friends used the FOIA.gov website to submit a request under FOIA for several categories of specific supporting

documents under FOIA. FOIA Request from Arlene Montgomery to the National

Park Service, Ex. 1. Friends requested the following documents:

> The project record for the Westslope Cutthroat and Bull Trout Preservation
> in Gunsight Lake Project in Glacier National Park including but not limited
> to:

> • The Biological Assessments for whitebark pine, meltwater lednian
> stonefly, western glacier stonefly, Canada lynx and critical habitat, grizzly
> bear, monarch butterfly and wolverine.

> • The USFWS concurrence with the Biological Assessments.

> • The research and recovery permit for bull trout under Section 10 of the
> ESA as authorized by Programmatic IntraService Consultation, TAILS No.
> 01EOFW00-2020-F-0082. Including any data that informed the permit.

> • Surveys and other inventory data for the above species. Bull trout redd
> counts, inventory data, habitat data for Slide, Cracker, Red Eagle and other
> bull trout streams/lakes that may be used to obtain donor fish and/or eggs.

> • Correspondence between USFWS, the Creston Fish Hatchery and Glacier
> National Park/Park Service including but not limited to emails, letters, phone
> records.

> • All other information that the Environmental Assessment relied upon.

> • Public comments received on the project.

*Id.* at 3.

26. The Park Service could have produced expediently the particular documents

that Friends requested. It did not. More than twenty business days have passed.

C. Friends' Fee Waiver Request

27. The Park Service declined Friends' request for a fee waiver. Friends had

explained that it is a 501(c)(3) non-profit corporation, and "[t]he information

requested will benefit the citizens of the United States and is for the purpose of

public education and to encourage public debate on important policy issues." FOIA

Request 4. Friends explained several methods by which it intended to distribute the information to the public. Those methods include their newsletter, their website, news media, public meetings, conferences, television and radio interviews, and regional and national publications. FOIA Request 4. The newsletter and website qualify Friends as a "representative of the news media." *Id.* Friends also explained that their Program Director speaks on panels. *Id.* They informed the Park Service that the organization has "absolutely no financial or commercial interest in these documents," but that the "work provides a public benefit and is in the best interest of the people of the state of Montana as well as the people of the United States." *Id.*

28. The Park Service informed Friends that it classified the organization as an "other-use" requester, and informed Friends that it intended to charge for producing the documents if they exceeded de minimis levels. *See* 5 U.S.C. § 552(a)(4)(A)(iv); 43 C.F.R. §§ 2.6(6), 2.39 (other-use requester). Email string among NPS FOIA Officer Alison Yamato, and Friends Program Director Arlene Montgomery, *et al.*, Ex. 2; *see* 5 U.S.C. § 552(a)(4)(A)(iv). The Park Service did not apply its regulations that require it to consider the public interest of disclosure. *See* 43 C.F.R. § 2.48.

29. Over four months have passed since Friends' FOIA request. The Park Service has likely already poisoned Gunsight Lake. *See* FOIA 5. It will likely stock the lake this spring, and key questions remain on how it intends to complete that process. *See id.* at 8. It has failed to produce the complete information on that process, so the public can assess the underlying rationale for its NEPA decision.

## COUNT 1

30. Friends hereby adopt by reference the previous paragraphs.

31. The Park Service possesses the documents that Friends seek.

32. Friends requested those documents from the Park Service.

33. FOIA requires the Park Service to produce the documents "promptly." 5 U.S.C. § 552(a)(3)(A). As the United States Court of Appeals for the District of Columbia Circuit explained, "FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years." *CREW*, 711 F.3d at 188. The Park Service failed to produce the documents after over four months.

34. Specifically, the Park Service failed to determine Friends' request within the twenty-business-day statutory timeframe. *See* 5 U.S.C. § 552(a)(6)(i). The Park Service violated FOIA by failing to produce the documents promptly in response to a direct FOIA request for them. *See id.* § 552(a)(3)(A); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec'y*, 895 F.3d 770, 781 (D.C. Cir. 2018) ("unreasonable delay in disclosing non-exempt documents is an abuse of FOIA's scheme" (quotations and alteration omitted)).

## COUNT 2

35. Friends hereby adopt by reference the previous paragraphs.

36. The Park Service declined Friends' request for a fee waiver without applying its regulations or the FOIA statutory language. FOIA requires production "without

any charge" or at a "reduced" charge if disclosure "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Friends qualify for a fee waiver.

37. NEPA's regulations declare that the public interest favors disclosing the information underlying an EA or a FONSI. *See* 40 C.F.R. § 1506.6(f) (2023). Friends sought the information to enhance public understanding of a fish-poisoning project in Glacier National Park, where about 3 million people visited in 2023.

38. Friends do not qualify as a commercial requester. Instead, the IRS recognizes the organization as a 501(c)(3) charitable nonprofit organization. It has a lengthy track record of acting in the public interest. *See* 43 C.F.R. § 2.48(a)(2)(iv).

39. Friends asserted that they would distribute the disclosed information to the public in several ways that include their newsletter, website, news media, public meetings, conferences, television and radio interviews, and regional and national publications. FOIA Request 4.

40. Friends met every element of the test for determining whether "disclosure is likely to contribute significantly to public understanding of [the Park Service's] operations or activities . . . ." *Id.* § 2.48(a)(2).

41. Although Friends requested a fee waiver in their request as the Department of the Interior regulations suggest, 43 C.F.R. § 2.46(a), the Park Service never analyzed that request or applied its regulations to determine whether to issue a fee

waiver to Friends. *See* 43 C.F.R. §§ 2.40, 2.45, 2.48. Instead, it stated that it "may charge [Friends] for some of [its] search and duplication costs." Email String 2.

42. The Park Service violated its own regulations and FOIA by declining to issue a fee waiver to Friends.

## PRAYER FOR RELIEF

43. Friends request the Court to issue the following relief:

a. Enjoin the Park Service from withholding the requested documents and order it to produce them;

b. Enjoin the Park Service from charging fees for producing the requested documents;

c. Issue a writ of mandamus directing the Park Service to produce the documents;

d. Issue a writ of mandamus directing the Park Service to apply its regulations that require it to determine whether Friends have a right to a fee waiver;

e. Award Friends their reasonable attorneys' fees and costs under 5 U.S.C. § 552(a)(4)(E); and

f. Provide further relief as necessary or appropriate.

Dated February 9, 2024,

   */s/ Jared S. Pettinato*
JARED S. PETTINATO
*Attorney for Plaintiff*