IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE WILD SWAN,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID ROEMER, in his official capacity as Superintendent, Glacier National Park, *et al.*;<br><br>    Defendants. | No. 24-398 (APM)<br><br>Judge Amit Mehta |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEY FEES AND COSTS**

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. iii
Introduction ............................................................................................................................... 1
Argument .................................................................................................................................... 2
I. FOIA makes Friends eligible for attorney fees and costs. ...................................... 2
   A. Under *Crooker*, the litigation caused the production. ......................................... 2
   B. The Park Service failed to demonstrate "unusual" or "extraordinary" circumstances to justify its delay in its production. ............................................. 4
II. FOIA makes Friends entitled to attorney fees and costs. ...................................... 7
   A. Friends' requested documents with potential public value ................................. 7
   B. The Park Service had no basis in law for its production delay. .......................... 9
III. Friends requested reasonable fees ................................................................................ 10
   A. Friends sufficiently explained their billing records. ........................................... 11
   B. Friends' counsel reasonably billed for hours complying with this Court's orders and closing out the second claim. .................................................................... 13
IV. An order declaring the Park Service liable for attorney fees would likely allow the Parties to negotiate that amount. ....................................................................... 13
Conclusion ................................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Bennett v. Spear*, 520 U.S. 154 (1997) ............................................................................... 8
*Chesapeake Bay Found., Inc. v. USDA*, 108 F.3d 375 (D.C. Cir. 1997) ....................... 7
*Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180 (D.C. Cir. 2013) .............................................................................................................................. 5, 6
**\*Crooker v. U.S. Dept. of Treasury**, 663 F.2d 140 (D.C. Cir. 1980) (per curiam) ......................................................................................................... 1, 2, 3, 7
*Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008) ..................................................................... 7
**\*Envtl. Def. Fund v. U.S. EPA**, 17-cv-02220 (APM) (D.D.C. Jan. 13, 2022) ... 3, 5, 7, 9
*Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94 (D.C. Cir. 2020) ................................... 3
*Hall v. CIA*, 115 F. Supp. 3d 24 (D.D.C. 2015) ............................................................. 12
*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................... 12
*Morley v. CIA*, 810 F.3d 841 (D.C. Cir. 2016) ................................................................. 8
*Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999 (D.C. Cir. 2014) ... 10
*Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021) ........................................................... 10
*Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) ..... 6
*Sierra Club v. U.S. EPA*, No. 19-cv-3018 (APM) (D.D.C. Mar. 31, 2021) .................. 11
*Urban Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301 (D.D.C. 2020) ........................ 8

**Statutes**

Endangered Species Act, 16 U.S.C. §§ 1531-1544 ...................................................... 1, 8
Freedom of Information Act, 5 U.S.C. § 552 ........................................................ passim

Pl.'s Reply in Supp. of its Mot. for Attorney Fees and Costs
*Friends of the Wild Swan v. Roemer*, No. 24-398 (APM)                                                                iii

# INTRODUCTION

The Park Service[1] effectively admits that Friends of the Wild Swan's request fell through the cracks. It designated that request as "simple" under its Freedom of Information Act (FOIA), 5 U.S.C. § 552, regulations, but the bureaucracy was not working. It never responded to a November 2023 reminder to complete the response. Yet three days after service of the lawsuit, the Park Service produced the records. Under those conditions, FOIA entitles Friends to attorney fees. *See Crooker v. U.S. Dept. of Treasury*, 663 F.2d 140 (D.C. Cir. 1980) (per curiam). The Park Service breached internal deadlines, violated its regulations, and admitted its response sat on the 99-yard line for three months awaiting a single signature.

The Park Service loses any credibility by disputing the potential public interest of the documents when four journalists wrote articles on the bull trout Endangered Species Act (ESA), 16 U.S.C. §§ 1531-1544, violations that Friends identified. And the Park Service unmoors its arguments from reality by suggesting that Friends' attorney could have litigated this whole case in 48 minutes ($1,000 - $425 filing fee = $575 / $726 per hour = 0.79 hours = 47.5 minutes) and this fee motion in 12 minutes. FOIA makes the Park Service liable to Friends for $9,988.20 in attorney fees and costs, and also for attorney fees to litigate this motion.

---

[1] This brief refers to Defendants the National Park Service, Superintendent David Roemer, and Intermountain Regional Director Katharine Hammond, collectively as the "Park Service."

## ARGUMENT

**I. FOIA makes Friends eligible for attorney fees and costs.**

In their opening brief, Friends showed the Park Service never responded to their November 2023 reminder. Pl.'s Mem. of P. & A. in Supp. of its Mot. for Attorney Fees 8, 12 (Pl.'s Br.), ECF No. 18-1. Yet three days after service of this lawsuit, the Park Service produced the records. *Id.* Under *Crooker*, awthe lawsuit caused the production, and the catalyst theory makes Friends eligible for fees. *Id.* at 10-14.

   A. Under *Crooker*, the litigation caused the production.

In its response, the Park Service argues Friends failed to prove the lawsuit caused the production, so this Court cannot find causation. Defs.' Opp. to Pl.'s Mot. for Attorneys' Fees (Defs.' Br.) 4-5, ECF No. 19. The law does not require that proof.[2] *Crooker* controls and there, like here, the agency never admitted the lawsuit caused the production. *See* 663 F.2d at 141-42.[3] Yet the D.C. Circuit held that, when an agency "ignore[s] or negligently fail[s] to respond to repeated reminders that the bureaucratic machinery has not worked," FOIA makes the plaintiff eligible for

---

[2] The Park Service inserts misleading edits into a quote from *Pyramid Lake Paiute Tribe of Indians v. U.S. Department of Justice*, 750 F.2d 117, 120 (D.C. Cir. 1984). The quote states that "Absent any evidence on the matter, the natural inference is that the Senator was simply responding to the Tribe's request." Defs.' Br. 3. The Court was stating that why a U.S. Senator (no party to the case) produced a document—not why an agency produced a document. That mis-quotation fails to prove courts interpret the lack of proof of causation in favor of the agency.
[3] The Park Service's initial response to the October email does not demonstrate diligence. *See* Envtl. Def. Fund, at *9-10 ("While EPA may have engaged in some communication with EDF as to its three requests before the filing of this lawsuit, its communications were nonsubstantive in nature, they were sporadic, and they cut off completely before EDF filed this action.").

Pl.'s Reply in Supp. of its Mot. for Attorney Fees and Costs
*Friends of the Wild Swan v. Roemer*, No. 24-398 (APM)                                            2

attorney fees. *Id.* at 142. It overturned the district court's contrary finding as "clearly erroneous." *Id.*

The Park Service argues that Friends failed to carry its burden "of demonstrating that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Envtl. Def. Fund v. U.S. EPA*, 17-cv-02220 (APM), at *7 (D.D.C. Jan. 13, 2022) (quotations omitted); Defs.' Br. 2.[4] Friends carried their burden by proving the Park Service failed to respond to Friends' November email after other, earlier requests. *See Crooker*, 663 F.2d at 141-42; Email String among Alison Yamato, NPS FOIA Officer, Arlene Montgomery, *et al.*, ECF No. 1-2. The Park Service stopped processing Friends' request on the 99-yard line. *See* Decl. of Alison Yamato ¶ 10-11, ECF No. 19-1. Yet three days after service, it produced the documents. Pl.'s Br. 8. It is more likely than not the Park Service would have further delayed production but for this lawsuit. *See Crooker*.

Indeed, the Park Service's declaration stoops short of denying the agency produced the records in response to this lawsuit. *See generally* Decl. of Yamato. It never explains the process it undertook or how the queue somehow miraculously led to coincidental production of Friends' response three days after service of the complaint. It carefully drafts around these points in a transparent attempt to obscure the obvious conclusion: the lawsuit caused the production.

---

[4] The Park Service relies on *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 98 (D.C. Cir. 2020). Defs.' Br. 2-3. But in that case, the agency had told the requestor when it would produce the documents, and produced them on that time frame. Here, the Park Service never told Friends when it anticipated producing the documents.

Pl.'s Reply in Supp. of its Mot. for Attorney Fees and Costs
*Friends of the Wild Swan v. Roemer*, No. 24-398 (APM)                                    3

Moreover, Friends succeeded on their second claim for a fee waiver by forcing the Park Service to prove it granted Friends' fee waiver. Compl. ¶¶ 35-42, ECF No. 1; Pls.' Br. 13. The Park Service admitted it made a mistake in failing to send out a letter: "Plaintiff's fee waiver was in fact granted on 9/27/23, although the agency appears to have inadvertently omitted to send out a letter confirming that your fee waiver was granted." ECF No. 18-13. Despite that admission, counsel argues that "Plaintiff was never denied a fee waiver." Defs.' Br. 2 n.1. In its email to Friends, however, it stated it could charge fees: "we may charge you for some of our search and duplication costs." Email String, ECF No. 1-2. If the Park Service had granted the fee waiver request, it could not have charged for those costs.

Friends insisted on the fee waiver in their November email to which the Park Service never responded. *Id.* During the litigation, they received a statement that the agency granted the fee waiver. Email from Fithawi Berhane to Jared Pettinato (May 29, 2024) (attaching the Request Details Report), ECF No 18-9. Friends forced the Park Service to state, contrary to its email, it would not charge fees.

   B. <u>The Park Service failed to demonstrate "unusual" or "extraordinary" circumstances to justify its delay in its production.</u>

The Park Service argues it acted with "due diligence," and that but for "personnel shortages," it would have produced the documents more quickly. Defs.' Br. 4-5. Neither the facts nor the law justifies the delay. On the facts, the response was ready on December 13, 2023, and then one individual left the agency. Decl. of Yamato ¶ 10-11. That does not qualify as "personnel shortages."

Even assuming the facts supported that conclusion, which they do not, FOIA precludes delays on that basis alone. FOIA assigns agencies a duty to make "records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). It allows "agencies to deal with broad, time-consuming requests (or justifiable agency backlogs)" by establishing unusual or exceptional circumstances to allow more time. *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013) (*CREW*). FOIA allows delays based on "due diligence" only *after* the agency proves extraordinary circumstances. 5 U.S.C. § 552(a)(6)(C)(i).

Here, the Park Service quotes cases that qualified under one exception or the other. Defs.' Br. 5. But "personnel shortages" do not qualify for either. *See* 5 U.S.C. § 552(a)(6)(B)(iii), (a)(6)(C)(i); *see Envtl. Def. Fund*, at *7 ("an agency cannot simply cite administrative burdens and thereby automatically avoid paying fees.").

The Park Service established no unusual circumstances. Within twenty workdays, FOIA requires the agency to send the requester its "determination" of which documents it will produce, and to provide "adequate specificity" that allows the requester to appeal. *Id.* § 552(a)(6)(A)(i); *CREW*, 711 F.3d at 189. If "unusual circumstances" prevent an agency from responding, and if the agency sends "timely written notice" with a proposed deadline, then FOIA allows ten additional workdays to respond. 5 U.S.C. § 552(a)(6)(B); *CREW*, 711 F.3d at 189. FOIA defines "unusual circumstances" to include only (I) responsive records located at different sites, (II) review and collection of "voluminous" records, and (III) consultation with another agency. *Id.* § 552(a)(6)(B)(iii); *Open Am. v. Watergate Special Prosecution Force*, 547

F.2d 605, 609 (D.C. Cir. 1976). The Park Service failed to produce the determination by the twenty-workday FOIA deadline, and "personnel shortages" do not fit that definition of "unusual circumstances." Moreover, the Park Service failed to send Friends any timely written notice that set forth any explanation or predicted production date. *See id.* § 552(a)(6)(B). No unusual circumstances justify any delay.

The Park Service established no "extraordinary circumstances" to allow more time to respond. *See* 5 U.S.C. § 552(a)(6)(C); *CREW*, 711 F.3d at 189. Those circumstances occur "when an agency . . . is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests." *Open Am.*, 547 F.2d at 616. The Park Service demonstrated no deluge of requests or inadequate resources.

FOIA specifically excludes from the definition of extraordinary circumstances any "delay that results from a predictable agency workload of requests under [FOIA], unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii). "Personnel shortages" of a single person qualify as a "predictable agency workload" issue, yet the Park Service proved no progress on any backlog of pending requests. *See generally* Decl. of Yamato. Agencies can defend delays with "due diligence" only *after* proving extraordinary circumstances. 5 U.S.C. § 552(a)(6)(C)(i). Here, because the Park Service failed to demonstrate extraordinary circumstances, any due diligence is irrelevant. *See id.*

Without any applicable statutory exception to FOIA's timelines, the Court can only conclude that Friends' request fell through the cracks because of the Park Service "lack of diligence" despite the November 2023 and earlier reminders. *See Crooker*, 663 F.2d at 142. Friends demonstrated their eligibility to attorney fees.

## II. FOIA makes Friends entitled to attorney fees and costs.

In their opening brief, Friends also demonstrated that FOIA entitled them to attorney fees on all four factors. Pl.'s Br. 14-15. The Park Service disputes two. This Court, however, always weighs all four factors. *Envtl. Def. Fund* at *11. The first three factors differentiate between public information and private advantage. *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008). All four, though, weigh in favor of Friends' entitlement to fees under FOIA.

### A. Friends' requested documents with potential public value.

For the first factor, Friends explained they requested the records for the public benefit of sharing information on the Park Service's analysis of the fish poisoning project at Gunsight Lake. Pl.'s Br. 14. In response, the Park Service relies on *Chesapeake Bay Found., Inc. v. USDA*, 108 F.3d 375 (D.C. Cir. 1997), to assert this "litigation" produced no public benefit. Defs.' Br. 7. That case's rare circumstance have no relevance. There, the federal agency withheld records with confidential, state-agency information. *Chesapeake*, 108 F.3d at 376. Although the agency offered to seek waivers from the state agencies if the requestor paid the postage, the requestor sued. *Id.* The D.C. Circuit found no public benefit from the litigation when the requestor could have received the records by paying the postage. *Id.* at 377-78.

In contrast, when like here, a requestor sought documents unlawfully withheld, the D.C. Circuit held that the "effect of the litigation" inquiry and the public-benefit factor both focus on the "*potential* public value of the information sought, not the public value of the information received." *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016) (citation and quotations omitted; emphasis added). No one can reasonably deny the potential public value of additional information on the Park Service's analysis of the fish poisoning project. Pls.' Br. 14-15 (citing news articles).

Moreover, Congress recognized the public benefit in citizens enforcing the ESA via citizen-suits: "the obvious purpose of [the ESA citizen-suit provision] is to encourage enforcement by so-called 'private attorneys general' . . . ." *Bennett v. Spear*, 520 U.S. 154, 165 (1997). Friends sought the biological assessments the Park Service had produced under the ESA, species surveys, permits, data, and public comments. Request Submitted, ECF No. 1-1. By seeking this "information not available to the public," Friends' request sought to "add[] to the public knowledge" and to provide a public benefit that Congress approved. *See Urban Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 315 (D.D.C. 2020) (Berman Jackson, J.) (quoted approvingly by *Envtl. Def. Fund*). It used that information to seek improvements to the Park Service's decision-making process, which makes it a public benefit. *See* Letter from Jared Pettinato to David Roemer, Superintendent of Glacier National Park, *et al.* (July 1, 2024), ECF No. 18-10; *Urban Air*, 442 F. Supp. 3d at 315 ("Plaintiffs also used the information they obtained in a formal effort to seek corrections to the EPAct study."). As in other situations, these environmental

records "obtained . . . through this action promote transparency and public oversight of agency matters of public importance." *Envtl. Def. Fund*, at *13.

 B. <u>The Park Service had no basis in law for its production delay.</u>

 The Park Service argues that it acted reasonably, and that "weighs heavily against awarding fees." Defs.' Br. 8. This Court has already rejected those arguments. "[M]ere reasonableness of an agency's position does not foreclose the award of fees." *Envtl. Def. Fund*, at *11.

 The fourth factor weighs the "reasonableness of the agency's withholding of the requested documents." *Id.* (quotations omitted). When an agency's "conduct before the start of this litigation evinces listlessness, not reasonableness," that qualifies as "the type of conduct Congress thought warranted an award of attorney's fees." *Id.* at *12. On the facts, the Park Service acted unreasonably. It predicted internally it would respond to Friends' request by December 2023, and by then it needed only a final signature; yet for three months, the response sat awaiting that signature. Request Details Report, ECF No. 18-5 ("Estimated Date of Completion: 12/4/2023"); Decl. of Yamato ¶ 10-11. The Park Service acted unreasonably.

 On the law, the Park Service acted unreasonably. The Park Service asserts that "not all processing delays constitute 'unreasonable' agency behavior." Defs.' Br. 9. Of course, FOIA's text allows some delays, but only if the agency demonstrates unusual or extraordinary circumstances. Here, the Park Service demonstrated none of those circumstances, so it has no justification for its delay. *See* Part I.B., *supra*.

Instead of acting reasonably, the Park Service acted arbitrarily and capriciously by violating its own regulations. "If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021). The Park Service put Friends' request on the simple track, so a response would take one to five workdays. Request Details Report ("Multi-Track Type: Simple"); *see* 43 C.F.R. § 2.15(c). But it violated its own regulations by failing to inform Friends of that track. *See* 43 C.F.R. § 2.15(e) ("Bureaus must advise you of the track . . . ."); *cf. Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) ("an agency action may be set aside as arbitrary and capricious if the agency fails to comply with its own regulations." (quotations omitted)). The Park Service acted arbitrarily and capriciously—not reasonably.

On all four factors, the public benefit weighs in Friends' favor; Friends' 501(c)(3) charitable nonprofit efforts weigh in their favor; their lack of private or commercial or monetary interest in the documents weighs in their favor; and the Park Service's failure to follow its own regulations and failure to produce the documents on its own internal timeline weighs in Friends' favor. Pls.' Br. 14-15. FOIA makes Friends entitled to attorney fees and costs.

### III. Friends requested reasonable fees.

Friends claimed reasonable attorney fees for 13.2 hours. Pl.'s Br. 18-19. The Park Service does not dispute the Fitzpatrick Matrix rates. Defs.' Br. 10 n.2. Yet it argues Friends' billing records are "insufficiently descriptive" and "consist of

needless and/or duplicative tasks." Defs.' Br. 10-12. It fails to recognize Friends' time spent ironing out the Park Service's mistakes. *See* Pl.'s Br. 19.

FOIA requires this Court to ensure "that counsel exercised good billing judgment and did not waste or otherwise unnecessarily spend time on the matter." Envtl. Def. Fund, at *18 (quotations omitted). Just as attorney-fee reimbursement statutes require plaintiffs to provide specific evidence, they also require the government to produce "equally specific countervailing evidence." *Id.* (quotations omitted). The Park Service provided no countervailing evidence to overcome the presumption in favor of the lodestar. Pl.'s Br. 16.

A. <u>Friends explained the general subject matter of their billing records.</u>

The Park Service objects to Friends spending 4.5 hours drafting the complaint. Defs.' Br. 12. That argument rings hollow when another agency "concede[d]" that courts "'routinely allow eight to twelve hours for a complaint.'" *Sierra Club v. U.S. EPA*, No. 19-cv-3018 (APM), at *11 (D.D.C. Mar. 31, 2021). The Park Service quibbles that Friends need not have named any federal officials, Defs.' Br. 13, but Friends rounded down their hours to the nearest tenth of an hour, and already removed three hours to bring the overall bill to a reasonable amount. Jared Pettinato Decl. ¶ 26, ECF No. 18-14. Those conservative procedures likely reduced the bill by more time than counsel spent on the few words adding two defendants.

The Park Service claims Friends' invoice inadequately describes phone calls between counsel and client by stating "next steps," "joint status report," and "motion for extension." Defs.' Br. 11. It asks for too much detail. The Supreme Court does

not require attorneys "to record in great detail how each minute of his time was expended," but only to "identify the general subject matter of his time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Every billing entry does not need a paragraph of detail, and these bills met the Supreme Court's standard of identifying the "general subject matter." *See id.*; *Hall v. CIA*, 115 F. Supp. 3d 24, 32 (D.D.C. 2015) ("While more detail would perhaps be helpful, this is all that is required") (Lamberth, J.). Ultimately, the Park Service has no right to make multiple mistakes and then fail to pay for an attorney to work with a client to sort them out. Pl.'s Br. 19.

Each billing entry provides context while preserving attorney-client privilege. *See* Pettinato Firm Invoice, ECF No. 18-16. For example, on March 21, 2024, Friends' counsel billed thirty minutes for this task: "Meet with A. Montgomery re: documents, motion for extension, and next steps." *Id.* By then, the Park Service had produced some documents. Letter from A. Yamato to A. Montgomery (Feb. 23, 2024), ECF No. 18-7. Friends did not think they had produced all of them. *See* Email from Jared Pettinato to Fithawi Berhane (Mar. 29, 2024), Ex. 17. Friends correctly identified missing documents; the Park Service even admitted to making another mistake. Email from A. Yamato to A. Montgomery (Apr. 16, 2024), ECF No. 18-8 ("you received an incomplete draft initially due to work we thought another coworker had taken on. Thus, the numbers of files/pages was also incorrect."). In the meantime, the Park Service had requested an extension to file the answer, and it had been ignoring Friends emails. *See* Email from Jared Pettinato (Mar. 29, 2024).

This billing entry adequately describes Friends' Program Director meeting with counsel to strategize on how to obtain the remaining documents. The other billing entries also provide sufficient details of their general subject matter.

### B. <u>Friends' counsel reasonably billed for hours complying with this Court's orders and closing out the second claim.</u>

The Park Service argues FOIA precludes liability for tasks after April 22, 2024, because "none of these tasks had anything to do with advancing this FOIA litigation in Plaintiff's favor." Defs.' Br. 13. It misapprehends the timing. The billing stopped on May 21. Pettinato Invoice. But only on May 29 did Friends' counsel resolve the second claim by obtaining a document stating the agency granted the fee waiver. Email from Fithawi Berhane (May 29, 2024).

For its April 22 deadline, the Park Service cites a later, May 7, 2024, joint status report that directed yet further litigation activities. ECF No. 14 (quoted by Defs.' Br. 13). From April 22 to May 21, Friends' counsel was complying with this Court's directions to meet and confer and to file a joint status report, while ensuring the Park Service produced the complete set of documents. *See* Order (Apr. 23, 2024), ECF No. 13. Counsel billed only for tasks necessary for this lawsuit.

### IV. Declaring the Park Service liable for attorney fees-on-fees would likely lead to settlement on the amount.

In its opening brief, Friends requested an order declaring the Park Service liable for attorney fees-on-fees for litigating this motion, so the Parties could negotiate the amount. Pl.'s Br. 19-20. Of course, Friends could not have predicted how much time the reply would take, so it could not have included that amount in its initial motion.

*Id.* In response, the Park Service admits courts award fees-on-fees for successful claims, but it proposes Friends could have litigated this entire motion in twelve minutes. Defs.' Br. 14 ("no more than 0.2 hours (at most) should be deemed compensable"). That ridiculous proposal shows the Park Service intending not to negotiate in good faith.

Friends would regret taking more of this Court's scarce and valuable time. They still expect an order on liability would lead to productive settlement discussions.

## CONCLUSION

For the foregoing reasons, FOIA makes the Park Service liable for $9,988.20 in attorney fees and costs, and additional fees for time spent briefing this motion.

Dated September 11, 2024,  /s/ *Jared S. Pettinato*
JARED S. PETTINATO
The Pettinato Firm
1802 Vernon St. NW, PMB 620
Washington, DC 20009
Jared@JaredPettinato.com
www.JaredPettinato.com

*Attorney for Plaintiff
Friends of the Wild Swan*